UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ALVARO ANTONIO and | ) | |
| FIDELA ANASTACIO ANTONIO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-0006-JDT-TAB |
| | ) | |
| WAL-MART and THERESA THEADEMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO REMAND

Plaintiffs Alvaro Antonio and Fidela Anastacio Antonio are asking the court to return this litigation to the Marion County Superior Court where it was originally filed.  Their lawsuit concerns their three-year-old son, who died on July 23, 2006, after a three-sided, six-foot tall mirror fell on him outside a dressing room of a Wal-Mart store in Indianapolis, Indiana.  The store, located at 3221 West 86th Street, is owned by Wal-Mart Stores East, LP and was managed at the time by Theresa Theademan.

The Antonios filed a complaint on December 4, 2006, alleging that Wal-Mart and Theademan negligently failed to maintain the premises in a reasonably safe way, use proper attachments or hardware to secure the mirror, and warn customers of the danger posed by the unsecured mirror.  (Compl. ¶ 6.)  On January 3, 2007, Defendants removed the case to this court, pursuant to 28 U.S. C. § 1441, claiming jurisdiction under the diversity statute, § 1332, which gives a federal district court power to hear disputes between citizens of different states when the amount in controversy, exclusive of interest and costs, exceeds $75,000.

For the purposes of § 1332, Wal-Mart and its general and limited partners, and their

members, are citizens of Delaware, the place of incorporation (or, as in this case, formation) and also of Arkansas, their principal place of business. Theademan, however, like the Antonios, is a citizen of Indiana. Normally this would defeat jurisdiction under the long-standing requirement of complete diversity, "meaning that no plaintiff may be a citizen of the same state as any defendant." *Fid. & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).

Under the doctrine of "fraudulent joinder," however, a defendant may remove a case even in the absence of complete diversity if the non-diverse defendant was fraudulently joined. In this context, "fraudulent" is a term of art. *Poulos v. Naas Foods*, Inc., 959 F.2d 69, 73 (7th Cir. 1992). It can refer to outright fraud in the plaintiff's pleading of jurisdictional facts. *Id.* Or it can refer, as Wal-Mart intended here, to cases in which the state claim against the non-diverse defendant has no chance of success. *Id.* In such cases, although the non-diverse defendant was likely named a party solely to prevent removal, the plaintiff's motive is irrelevant. *See id.*

Defendants indeed contend that the Antonios named Theademan as a defendant solely to deprive this court of diversity jurisdiction. (Defs.' Notice Removal ¶ 5.) They argue that Plaintiffs have no cause of action against Theademan, however, because she was not store manager when the mirror was installed and Indiana law does not allow liability against a corporate officer merely because of her office. (*Id.* at ¶¶ 8-9.) The officer must have some additional connection to the wrong. (*Id.*)

The Antonios filed their remand motion on January 3, 2007. They argue that Theademan does have an additional connection to the wrong because "she failed to keep the store safe and to warn customers of unsafe conditions." (Pls.' Mot. Remand. ¶ 9.) They also ask the court to

2

award them attorneys' fees pursuant to 28 U.S.C. § 1447(c) in the amount of $1,950.

## II.  DISCUSSION

### A.  Fraudulent Joinder

The aim of diversity jurisdiction is to protect out-of-state defendants from the prejudicial harm that can result from having to litigate in a plaintiff's home state.  *See Poulos*, 959 F.2d at 73.  However, neither federal law nor court decisions allow defendants to discard plaintiffs as they please to make a state case removable.  *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000).  Plaintiffs can preclude a lawsuit from being litigated in federal court by including an in-state party as a defendant.  *Id.*  (And in such situations, presumably, local prejudices no longer favor one side exclusively.)

The doctrine of fraudulent joinder places some limits on this sort of forum shopping, though.  The doctrine allows the defendant to remove the case on the theory that the plaintiffs' claims against the non-diverse plaintiff are so insubstantial that  complete diversity (and the danger of unfair local prejudice) exists in fact.  *Poulos*, 959 F.2d at 73.  To assert the doctrine, a defendant must show that a plaintiff's claim cannot succeed, "even after resolving all issues of fact *and law* in favor of the plaintiff."  *Id.*  (emphasis in original.)

As the Seventh Circuit and other courts have noted, this is a heavy burden.  *Id.*;  *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006); *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  The party seeking removal must show there is no reasonable possibility that a state court would rule against the non-diverse defendant.  *Poulos*, 959 F.2d at 73.  This does not require a defendant to negate every theoretical possibility.  *Id.* at 74.  It is

enough to show that a plaintiff has no reasonable prospect of success even when all issues of fact and ambiguities of law are resolved in the plaintiff's favor.

But this the Defendants have not done.  They have not shown that the Antonios would have no hope of prosecuting a claim against Theademan.

At the start, it is worth noting that Defendants describe the issues presented by the Complaint with less than complete precision.  Although they acknowledge prefunctorily that the Antonios are seeking relief for Defendants' alleged failure to maintain the premises in a safe condition, they mostly characterize the Complaint as a concern about the mirror's installation. Moreover, they state in their briefs and accompanying affidavit from Theademan that the three-side mirror was a fixture.

The court is left wondering what they mean by this.  Was the mirror a fixture in the sense that it was a permanent part of the building that could not be removed without damage to the building?  Presumably not, given that it toppled over.  Or do they mean that the mirror was a "trade fixture," as opposed to a consumer good, and if so, what relevance does this have? Defendants have cited no cases or statutory law that distinguishes the duty of care owed to an invitee on the basis of whether the source of the injury was a trade fixture or a consumer good.

The obvious explanation is that Defendants are simply asserting that the mirror was installed before Theademan's arrival as the store manager and therefore she could not face any liability for negligence in its installation.  On this point, the court readily agrees.  Improper installation is one possible source of negligence in this case.  It may be that the mirror was installed with improperly sized wall anchors, or bolts susceptible to rust, or secured in plaster or some other setting that failed to provide proper support – and that the fall of the mirror was

4

sudden and could not have been predicted by normal inspection.  If so, the claim against Theademan will fail because the proper individual defendants are those involved in the installation of the mirror.

There are other possible sources of negligence, however.  It may be that the fastening of the mirror was so poorly done that its inadequacy was obvious and the danger was apparent for weeks prior to the accident.  For all the information in the record, the mirror could have been "affixed to the wall" with duct tape.  Or the bolts securing the mirror were so loose that anyone glancing at the mirror would have realized it was about to fall.  The mirror could have been moved since it was installed.  Customers or employees could have complained to store management that it was shaky.  On the record before the court, all of these and more (except hopefully the use of duct tape) are real possibilities.  That Theademan was not the store manager at the time the mirror was installed may turn out to be irrelevant.  Moreover, the Antonios are entitled to discovery to determine, if possible, the cause of the mirror's collapse.

That said, the issue of whether Theademan can be held personally liable is not so quickly resolved.  On one hand are a line of Indiana cases holding that an officer of a corporation "is personally liable for the torts in which she has participated or authorized or which she has directed."  *State Civil Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000) (citing *Palace Bar, Inc., v. Fearnot*, 376 N.E.2d 1159, 1169 (Ind. Ct. App. 1978), *vacated on other grounds by* 381 N.E.2d 858 (1978); *Gable v. Curtis*, 673 N.E.2d 805, 809 (Ind. Ct. App. 1996)).  Yet the question of what constitutes participation in, authorization of, or direction of a tort is still subject to some interpretation.

Defendants cite cases from Texas holding or suggesting that a store manager cannot be

held individually liable in negligence when her only duties are to the store owner, not the customer.[1]  (*See* Doc. No. 18 at 4; Defs.' Surreply 3-5.)  Three are district court cases, of which only one is reported.  *Allen v. Home Depot U.S.A., Inc.*, No. Civ.A. SA-04-0CA703X, 2004 WL 2270001 (W.D. Tex. Oct. 6, 2004); *Bueno v. Cott Beverages, Inc.*, No. Civ.A SA-04-CA-24-XR, 2004 WL 1124927 (W.D. Tex. March 15, 2004); *Palmer v. Wal-Mart Stores, Inc.*, 65 F. Supp. 2d 564 (S.D. Tex. 1999).  The fourth is a state appellate decision.  *Pico v. Capriccio Italian Restaurant*, 209 S.W.3d 902 (Tex. App. 2006).  All of these cases rest, however, on an interpretation of Texas law.

They focus on a 1996 Texas Supreme Court decision that held that corporate employees have no independent duty to furnish a safe workplace to their employees and therefore cannot be held personally liable for a corporation's failure to provide a safe workplace.  *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).  From this statement of Texas law, the *Palmer* court reasoned that a store manager in Texas can be held liable only for the breach of an "*independent* duty of reasonable care, apart from that which his employer owed any store patron."  *Palmer*, 65 F. Supp. 2d at 567.  In *Allen* and *Bueno*, another Texas district court came to the same conclusion.  In *Pico*, a Texas court of appeals cited the *Palmer* holding in reasoning that the president and sole shareholder of a nightclub was not personally liable for the club's failure to take reasonable measures to ensure a guest's safety.  *See Pico*, 209 S.W.3d at 912.  (In this regard, the circumstances in *Pico* differ from *Palmer*, *Allen*, and *Bueno*.  Unlike a store or plant manager, a club president's duties might or might not include oversight over the club's general

---

[1]  Defendants also cite to *Mayer v. Wal-Mart Stores, Inc.*, Civ. A. No. 89-3781, 1990 WL 84553 (E.D. La. June 11, 1990), an unpublished slip opinion of seven paragraphs.

operations.)

In *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 294 n.5 (7th Cir. 2000), the Fifth

Circuit noted, however, its uncertainty about whether the *Palmer* line of cases accurately

reflected the current state of Texas law.  In *Valdes*, the plaintiff was appealing the district court's

denial of attorney fees after the circuit court, in an earlier unpublished decision, reversed the

district court's finding of fradulent joinder and ordered the case remanded.  The Fifth Circuit

noted that "*Leitch* was not a premises case and we cannot say with full confidence that it will be

applied outside of the employer-employee context."  *Id.*

That uncertainty does not seem to have changed.  Earlier this year, a district court

dismissed a Wal-Mart claim of fraudulent joinder of a store manager and ordered the case

remanded on the basis of the Fifth Circuit's unpublished *Valdes* decision.  *Guevara v. Wal-Mart

Stores, Inc.*, C.A. No. C-07-08, 2007 WL 397490, at *3 (S.D. Tex. Feb. 1, 2007) (citing Valdes

v. Wal-Mart Stores, Inc., Nos. 97-20179, 97-20610 (5th Cir Sept. 4, 1998)).

This court need not delve further into a dispute regarding an interpretation of Texas law.

What is material to this litigation is that a dispute exists.  Seventh Circuit law is clear that in a

removal based on fraudulent joinder, all ambiguities of law must be resolved in the plaintiff's

favor.  So even if Texas law were material, and it is not, the *Palmer* line of cases would not

provide legal support for a claim of fraudulent joinder.

Texas is not the only state where defendants have pressed the argument that a store

manager's joinder is fraudulent.  A district court in Mississippi upheld a removal after finding

that the Mississippi Supreme Court had "never directly held that a store manager, in addition to

the store owner, can be personally liable for injuries that a customer sustains while in the store."

*Griffin v. Dolgen Corp., Inc.*, 143 F. Supp. 2d 670, 671 (S.D. Miss. 2001).  This reasoning is not persuasive, at least without reason for believing that the failure to address an issue meant the question had already been resolved by statute, lower appellate decisions, or an extension of basic tort principles.

Two district courts in South Carolina also considered claims of fraudulent joinder of a store manager, but reached contrary conclusions.  In *Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 655-56 (D.S.C. 2006), the court agreed that, under South Carolina law, a party who operates a premises but is neither an owner or lessee may yet have a duty of reasonable care owed to invitees if the operator had sufficient control over the premises.  It also acknowledged that the South Carolina Supreme Court had never addressed the level of control that a store manager would need to exercise to be held personally liable.  *Id.* at 656.  It concluded, however, that "merely being a manager or employee does not evidence a sufficient level of control."  *Id.*

In *Benjamin*, the individual defendant was a department manager, not a store manager, and in a subsequent decision, another South Carolina district court distinguished *Benjamin* on that basis.  *Cook v. Lowe's Home Centers, Inc.*, Civil No. 5-:06-2130-RBH, 2006 WL 3098773, at *4 (D.S.C. Oct. 30, 2006).  It found that under South Carolina common law of joint and several liability, a store manager "by virtue of his position has a high level of control over the store . . . . [and] is not a sham defendant."  *Id.*

In this case, the determination of whether removal was proper rests on Indiana law, not the law of Texas, Mississippi, South Carolina, or some other state.  Like the court in *Griffin*, this court has been unable to find any relevant case law directly addressing the extent that a store manager can be held personally liable in a premises liability case.  *But see Howe v. Ohmart*, 33

N.E. 466 (1893) (affirming a trial court's negligence action against a church corporation, its trustees and the college's superintendent/principal, who oversaw the construction site where the injury occurred).[2]

Indiana law permits an officer of a corporation, which would include a store manager, to be held personally liable for torts in which the officer participates, authorizes, or directs. *See State Civil Rights Comm'n, Inc.*, 738 N.E.2d at 1050.[3]  It is not clearly obvious, however, that a store manager's failure to act constitutes participation, authorization, or direction.

As an employee of Wal-Mart, Theademan was the company's agent.  Under general principles of agency, an agent's breach of a duty to the principal is not itself a basis for holding the agent liable in tort to a third party.  Restatement (Third) of Agency § 7.02.  The agent's conduct must breach a duty that the agent owes to the third party.  *Id.*  Moreover, in Indiana, the duty to ensure the safety of an invitee in Indiana is generally thought to fall on the owner or occupier of the land.  *See* 21 Ind. Law Encyclopedia Negligence § 17.

All of this might seem to support the notion, advanced by Wal-Mart in *Palmer* and like cases, that a store manager cannot be held personally liable until some evidence suggests the manager owed a duty to the customer that was independent of the duty owed to the store.  If this were indeed Indiana law, then Theademan was only responsible to Wal-Mart for keeping the store in safe condition, and only Wal-Mart could be held liable for the breach of this

---

[2]  However, under cases such as *Hanson v. Saint Luke's United Methodist Church*, 704 N.E.2d 1020, 1026-27 (Ind. 1998), the plaintiff would have to show that the trustees participated in the tort or ratified the actions that caused the injury.

[3]  *See also* Robert B. Thompson, *Unpacking Limited Liability: Direct and Vicarious Liability of Corporate Participants for Torts of the Enterprise*, 47 Vand. L. Rev. 1, 8 (1994) (noting that "the corporate shield really only works for contracts").

responsibility or duty.  In short, Theademan would enjoy the same sort of qualified immunity that the Indiana Tort Claims Act bestows on governmental employees.  *See* Ind. Code § 34-13-3-5.

But duties, of course, can be delegated, although the Comparative Fault Act or the doctrine of non-delegable duties will often prevent a principal from escaping liability.  *See Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002); *Bagley v. Insight Commc'ns Co.*, 658 N.E.2d 584, 587-88 (Ind. 1995).  Moreover, on a general level, liability depends on the power to prevent injury.  *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 250 (Ind. 1996).  Under these principles, Theademan may be held liable if Wal-Mart gave her the responsibility and authority to ensure the safety of its premises.  Indiana courts could hold, as the *Cook* court did, that this delegation can be inferred by the nature of her position.  Or they could require the Antonios to present evidence of this delegation.

This court need not conclusively determine whether the Antonios have a viable claim against Theademan.  For the purposes of deciding if removal was proper, it is enough to note that Indiana law is unsettled regarding the extent that a plaintiff may bring a claim in negligence against a store manager, based on a delegation of the premise owner's duties toward invitees.  It is not clear that the Antonios' claim cannot succeed.  For this reason, removal under the doctrine of fraudulent joinder was improper and remand is appropriate.

### B.  *Attorneys' Fees*

The Antonios are asking the court to award them $1,950 in attorneys' fees, reflecting the 9.75 hours spent by one of their attorneys, at the rate of $200 per hour,  in seeking a remand of this case.  They allege that the Defendants had no objectively reasonable basis for the removal

and therefore they should be awarded fees pursuant to 28 U.S.C. § 1447(c).

The removal statute authorizes a court remanding a case to award payment of "just costs and any actual expenses, including attorney fees," but the authorization is permissive, not mandatory. 28 U.S.C. § 1447(c). The Supreme Court recently held that there was no "heavy congressional thumb" on either side of this fee-shifting provision. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). Given the lack of any presumption, a court should award fees only where the removing party "lacked an objectively reasonable basis for seeking removal." *Id.* at 141. This test should recognize "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

The Seventh Circuit recently compared this test to the determination of qualified immunity, in which state officials are presumed to be aware of existing case law and are liable only if their actions violate clearly established and particularized rights. *Lott v. Pfizer*, --- F.3d ---, 2007 WL 1804261, at *3 (7th Cir. June 25, 2007). "As a general rule, if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorney's fees." *Id.*

In this case, the Defendants' asserted basis for removal was that Theademan's joinder was fraudulent, as that term is understood in removal matters. They noted that Theademan was not employed at the store when the mirror was installed, that the installation of the mirror was therefore not part of her supervisory responsibilities, and that the Antonios failed to allege that she had any additional connection to the tort beyond her status as a store manager. (Defs.'

Notice Removal ¶¶ 8-9.)

On its face, this notice did not accurately depict the Antonios' claims.  The Complaint alleged that Theademan, along with Wal-Mart, was responsible for the operation and maintenance of the store premises.  (Compl. ¶ 3.)  So she was not a defendant merely because of her status.  The Complaint further alleged that Theademan and Wal-Mart were negligent in maintaining the premises.  (Compl. ¶ 6.)

The Defendants also argued that fraudulent joinder was appropriate because  Louisiana and Texas courts had held that a store manager's breach of administrative or managerial responsibilities provided an insufficient basis for a negligence claim.  However, the law in the Seventh Circuit, as in other circuits, is clear: a claim of fraudulent joinder must be based on the state law where the claim is brought.  *Poulos*, 959 F.2d at 73.  However illuminating the Texas and Louisiana cases may be, they do not provide an objectively reasonable basis to remove the Antonios' complaint.

Nevertheless, the standard for fee-shifting is an "objectively reasonable" basis, not a subjective one.  The issue is not whether Wal-Mart has good reasons for litigating fraudulent joinder in this and other states, as it clearly has.  Nor is the fee-shifting measure a judgment on the quality of the Defendants' pleadings.

As the court's earlier discussion makes clear, Indiana courts have not addressed the issue of when a store manager may be held personally liable in a premises liability suit.  The law may be clear that an officer can be held liable for participation when the evidence shows the officer participated in the tort or authorized or directed the actions that led to the injury.  In the context of a premises liability claim, however, cases have not addressed when or if a store manager's

12

failure to act constitutes participation, authorization, or direction.  An 1893 case affirming a verdict against a college superintendent is not a solid footing for finding a store manager's liability to be firmly established.

At the same time, the very absence of cases in Indiana addressing this issue means the court cannot say that the ambiguity was readily apparent.  If it were, Defendants would have been on notice that fraudulent joinder was improper until the ambiguity was resolved.  As the law stood, though, a reasonable defendant could argue in good faith that a store manager could not be held personally liable for the store's negligence.

Nor can the court say, on the evidence before the court, that Defendants removed the case merely to delay this litigation and impose costs upon the Antonios.  District courts in other states, on facts and law differing little from the facts and law before this court, had found fraudulent joinder removals to be proper.  Defendants would have been on stronger ground had there been a prior decision in their favor in the Northern or Southern Districts of Indiana. However, all issues of law must have a starting point.

For these reasons, the Defendants' removal is not objectively unreasonable, and the Magistrate Judge recommends that Plaintiffs' motion for attorney fees be denied.

### III.  CONCLUSION

For the reasons discussed above, the Magistrate Judge recommends that Plaintiffs'

motion to remand [Docket. No. 17] be granted.  Any objections to the Magistrate Judge's Report

and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and

failure to file timely objections within the ten days after service shall constitute a waiver of

subsequent review absent a showing of good cause for such failure.

Dated:  August 20, 2007

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:
Thomas L. Davis
LOCKE REYNOLDS LLP
tdavis@locke.com

Matthew R Dorsett
LOCKE REYNOLDS LLP
mdorsett@locke.com

Douglas Ray Gwyther Jr.
CGT LAW GROUP INTERNATIONAL
dgwyther@cgtlaw.com

Bryan K. Harris
BRYAN K. HARRIS P.C.
bkharris@mac.com

Eric A. Riegner
LOCKE REYNOLDS LLP
eriegner@locke.com

Mikal C. Watts
WATTS LAW FIRM LLP
mcwatts@wattslawfirm.com

William E. Winingham Jr
WILSON KEHOE & WININGHAM
winingham@wkw.com